**UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Newport News Division**

| | |
|---|---|
| In re:   WILLIAM KENNETH MATKINS,<br>          and<br>          CHRISTY ANN FULLER-MATKINS,<br><br>                    Debtors. | Case No. 18-50047-FJS<br><br>Chapter 7 |
| COMMERCIAL CASH FLOW, L.L.C., t/a,  :<br>BEACH COMMERCIAL FINANCE,              :<br>          Plaintiff,                                         :<br>                                                              :<br>v.                                                          :<br>                                                              :<br>WILLIAM KENNETH MATKINS             :<br>                                                              :<br>          Defendant.                                     : | APN _____ |

## CORRECTED COMPLAINT TO DETERMINE NONDISCHARGEABILITY OF DEBT

Plaintiff Commercial Cash Flow, L.L.C., t/a Beach Commercial Finance ("Beach Commercial"), by counsel, respectfully submits the following as its complaint (this "Complaint") seeking a determination on the nondischargeable status of a portion of the indebtedness owed to Beach Commercial by defendant William Kenneth Matkins ("Mr. Matkins") to the extent: (i) based upon false certifications or representations or based upon actual fraud (unrelated to any statement regarding Mr. Matkins' financial condition), within the scope of 11 U.S.C. §523(a)(2)(A); (ii) based upon fraud or defalcation committed while acting in a fiduciary capacity, within the scope of 11 U.S.C. § 523(a)(4); and/or (iii) based upon embezzlement or larceny, also pursuant to 11 U.S.C. § 523(a)(4).

In support of this requested relief, Beach Commercial states as follows:

Peter G. Zemanian, VSB No. 24922
Zemanian Law Group
223 E. City Hall Ave., Suite 201
Norfolk, Virginia 23510
(757) 622-0090
Counsel for Beach Commercial

### Parties

1. On January 17, 2018, Mr. Matkins and his spouse Christy Ann Fuller-Matkins ("Ms. Fuller-Matkins", and together with Mr. Matkins the "Debtors") filed with this Court a joint voluntary petition under chapter 7 of the United States Bankruptcy Code, 11 U.S.C. §§ 701, *et seq*. The Debtors are residents of Toano (James City County), Virginia.

2. Mr. Matkins is the president and part owner of the former Bay Rivers Industrial, Inc. ("Bay Rivers"), a Virginia corporation which had its principal office located in Toano (James City County), Virginia.

3. Beach Commercial is a Virginia limited liability company, with its principal office located in Virginia Beach, Virginia.

### Jurisdiction and Venue

4. This Court has referred jurisdiction over this chapter 7 case pursuant to 28 U.S.C. §§ 1334(a) and 157(a).

5. This Court likewise has referred jurisdiction over this particular proceeding, pursuant to the "arising in" and "related to" jurisdiction of 28 U.S.C. § 1334(b).

6. This is an "adversary proceeding" within the meaning of Rule 7001(6) of the Federal Rules of Bankruptcy Procedure.

7. This adversary proceeding is a "core proceeding" within the scope of 28 U.S.C. § 157(b)(2)(I).

8. Venue properly lies in this district by virtue of 28 U.S.C. § 1409(a).

## Allegations Common to All Counts

9. Beach Commercial and Bay Rivers are parties to an *Agreement* dated as of February 7, 2017 (the "Factoring Agreement"), pursuant to which Beach Commercial at its option may extend to Bay Rivers short-term working capital via the purchase, from time to time, of specific invoices and accounts receivable (collectively "Sold Invoices") offered for sale by Bay Rivers. A redacted copy of the Factoring Agreement is attached as **Exhibit 1**.

10. Beach Commercial acquires complete ownership and title to all Sold Invoices offered for sale and purchased pursuant to the Factoring Agreement, and the right to receive all proceeds of such Sold Invoices.

11. Mr. Matkins has personally guaranteed payment and performance of Bay Rivers' obligations under the Factoring Agreement pursuant to a *Continuing Guaranty and Waiver* dated as of February 7, 2017 (the "Guaranty"). A copy of the Guaranty is attached as **Exhibit 2.**

12. During the six-month period from February 7 to August 31, 2017, Bay Rivers sold to Beach Commercial several Sold Invoices, with aggregate face values of $1,872,616.84.

13. As of the date of this Complaint, Beach Commercial has received payments totaling $1,606,709.05 on its Sold Invoices.

14. As of the date of this Complaint, a balance of $265,907.79 remains due and owing to Beach Commercial on Sold Invoices for which customer payments have not yet been received.

15. Beach Commercial continues to seek payment from Huntington Ingalls Industries, the one remaining account debtor on unpaid Sold Invoices, but has uncovered a number of defalcations and malfeasance on the part of Mr. Matkins which have rendered at least a portion of such outstanding Sold Invoices uncollectible.

16. Beach Commercial surmises that the entire $265,907.79 still-outstanding balance on Sold Invoices is impaired to some measure by the improper actions of Mr. Matkins as

"servicing agent" under the Factoring Agreement. Beach Commercial, however, has decided to restrict this request for nondischargeability to just six (6) Sold Invoices for which the malfeasance of Mr. Matkins is unquestionably clear.

a. Fraudulent Receivables

17. In this Complaint, Beach Commercial has identified three (3) Sold Invoices for which Bay Rivers did not deliver (and ultimately never delivered) to Huntington Ingalls the specified product - - that being 340 product items (the "Fraudulent Receivables").

18. Prior to offering to sell to Beach Commercial each of the Sold Invoices, Bay Rivers and Mr. Matkins were required to complete, sign and present to Beach Commercial its standard *Authorization to Sell* form (the "ATS"). A redacted copy of the completed ATS form, copies of the three subject invoices and related supporting paperwork are attached as **Exhibit 3**.

19. Every ATS form completed and signed by Mr. Matkins, on behalf of Bay Rivers, and presented to Beach Commercial includes a number of transaction-specific certifications and representations, including:

- 2. The [c]ustomer [*i.e.*, Huntington Ingalls] has received the goods and is satisfied with the quantity and quality.

- 8. The [s]eller [*i.e.*, Bay Rivers/Mr. Matkins] understands that [Beach Commercial] is directly relying on all of the above certifications and representations when purchasing this invoice or these invoices.

20. For each and all of the outstanding Sold Invoices, Mr. Matkins circled the "Y", in the affirmative, to the foregoing certification nos. 2 and 8. Mr. Matkins personally signed each and all of the completed ATS forms presented to Beach Commercial as required for sale of the outstanding Sold Invoices. Beach Commercial justifiably relied upon the truth and accuracy of Mr. Matkins' certifications and representations when purchasing the Sold Invoices.

21. Mr. Matkins' offers to sell to Beach Commercial the Fraudulent Receivables, and his receipt (via e.f.t.) from Beach Commercial of the corresponding "Downpayment", as

provided in section 2.2 of the Factoring Agreement, were based upon the false certifications and representations contained in the submitted ATS forms. Such false certifications were presented to Beach Commercial, despite Mr. Matkins knowing that the Sold Invoices comprising Fraudulent Receivables were not, at the time of their sale, bonafide or valid and thus were not collectible.

22. As of the date of this Complaint, a total of **$134,879.14** remains due and outstanding on the Fraudulent Receivables.

                                                     b.    <u>Misappropriated Proceeds of Sold Invoices</u>

23. As of the date of this Complaint, Beach Commercial has identified another three (3) Sold Invoices for which Mr. Matkins, in breach of his obligations under the Factoring Agreement and the Guaranty, wrongfully diverted customer payments belonging to Beach Commercial (the "Misappropriated Proceeds").

24. The Factoring Agreement, in pertinent part, provides and requires:

- That Bay Rivers is designated as the "servicing agent" for all Sold Invoices. Factoring Agreement, at preamble.

- That Beach Commercial obtains complete ownership of, and title to, the Sold Invoices upon deposit or application of the corresponding Downpayment. Factoring Agreement, at ¶ 2.5.

- That Bay Rivers' employees and officers (including Mr. Matkins) are prohibited from depositing any customer checks received in payment of Sold Invoices. Factoring Agreement, at ¶3.1.

- That all original paper checks and related check stubs, received by Bay Rivers in payment of Sold Invoices "must, as promptly as possible," be delivered to Beach Commercial. Factoring Agreement, at ¶3.2.

- That Bay Rivers "shall, without offset, act as a servicing agent and trustee of an EXPRESS TRUST for [Beach Commercial's] benefit" with regard to Sold Invoices. Factoring Agreement, at ¶3.6.

25. On or shortly after August 16, 2017, Mr. Matkins, on behalf of Bay Rivers, received from Glotech, Inc. its check no. 30694 in the amount of **$34,921.70** in payment of Sold

5

Invoices owned by Beach Commercial. Redacted copies of the Glotech, Inc. check, the Sold Invoices on which the check was tendered in payment and related supporting paperwork are attached as **Exhibit 4**.

26. In breach of his obligations under the Factoring Agreement, Mr. Matkins failed to deliver the Glotech, Inc. check to Beach Commercial. Mr. Matkins instead opened a new company checking account, at a banking institution different from Bay Rivers' primary bank (BB&T). Without prior notice to or the consent of Beach Commercial, Mr. Matkins deposited the proceeds of the Glotech, Inc. check into this newly opened Bay Rivers checking account.

27. On information and belief, Mr. Matkins promptly spent the proceeds received from Glotech, Inc. in payment of such Sold Invoices, and these Glotech, Inc. proceeds no longer are available to be remitted to Beach Commercial.

c. Additional Charges

28. As of the date of this Complaint, purchase discounts (*i.e.*, factoring fees), a 1% late fee and 3% APR interest have been accumulating on the outstanding Fraudulent Receivables, in the amount of **$8,463.67**, and on the outstanding Misappropriated Proceeds, in the amount of **$2,249.54**, in accordance with sections 2.6, 5.4, 5.5 and 10.2.k of the Factoring Agreement.

29. Through the date of filing of this Complaint, Beach Commercial has incurred **$10,583.50** in attorney's fees and other reimbursable costs on account of the unpaid Sold Invoices, which sums are recoverable under the terms of sections 10.2.e of the Factoring Agreement.

**Count One - - 11 U.S.C. §523 (a)(2)(A) (false representation/actual fraud)**

30. Beach Commercial restates and incorporates for purposes of this Count One the allegations set forth in paragraphs 1-29 above.

31. Section 523(a)(2)(A) excepts from discharge all debts of an individual debtor:

> (2) for money … to the extent obtained by –
> (A) false pretenses, a false representation or actual fraud, other than a statement respecting the debtor's or an insider's financial condition.

11 U.S.C. §523(a)(2)(A).

32. The Factoring Agreement, in section 9.1, provides that Bay Rivers and Mr. Matkins jointly and severally "promise, represent, certify, warrant and covenant" that:

> [e]ach invoice sold to Beach Commercial, at the time of its creation and continuing until Beach Commercial receives the [c]ustomer's payment, is an accurate and undisputed statement of a [c]ustomer's indebtedness owed to [Bay Rivers] for goods, sold to, delivered to, and accepted by the [c]ustomer and/or for services rendered to and accepted by the [c]ustomer.

33. An equivalent certification is made by Bay Rivers and Mr. Matkins pursuant to the corresponding completed, signed and delivered A.T.S. forms accompanying each of the Sold Invoices.

34. Mr. Matkins, on behalf of Bay Rivers, obtained from Beach Commercial money based upon his false certifications and representations and upon actual fraud underlying the Fraudulent Receivables, for which Bay Rivers supplied no goods to Huntington Ingalls as of the date of sale to Beach Commercial of such Sold Invoices.

35. Beach Commercial justifiably relied upon Mr. Matkins' false certifications and misrepresentations underlying the Fraudulent Receivables. <u>Field v. Mans</u>, 516 U.S. 59 (1995)

(the standard for establishing a §523(a)(2)(4) nondischargeability claim is "justifiable reliance", a less-demanding standard than "reasonable reliance").

36. The amount remaining due to Beach Commercial on the Fraudulent Receivables, and the associated interest and charges, are nondischargeable as to Mr. Matkins within the scope of 11 U.S.C. §523(a)(2)(A).

37. In addition, by intentionally depositing the $34,921.70 Glotech, Inc. check into the new Bay Rivers checking account, Mr. Matkins committed an act of actual fraud, rendering such additional portion of his indebtedness to Beach Commercial nondischargeable under 11 U.S.C. §523(a)(2)(A).  Husky Int'l Elec., Inc. v. Ritz, 136 S. Ct. 1581 (2016) (creditor need not establish a "false representation" by debtor in order to establish "actual fraud" under §523(a)(2)(A); these are distinct concepts).

**Count Two – 11 U.S.C. § 523(a)(4) (fiduciary defalcation)**

38. Beach Commercial restates and incorporates for purposes this Count Two the allegations set forth in paragraphs 1 through 37 above.

39. Section 523(a)(4) excepts from discharge all debts of an individual debtor:
    (4) for fraud or defalcation while acting in a fiduciary
    capacity, embezzlement or larceny.

11 U.S.C. §523(a)(4).

40. By virtue of his status as president and part owner of Bay Rivers, and pursuant to section 3.6 of the Factoring Agreement, Mr. Matkins stands in a fiduciary capacity for the actions and omissions of his company.  See generally FDIC v. Sea Pines Company, 692 F.2d 973, 976-77 (4th Cir. 1982) ("when [a] corporation becomes insolvent, the fiduciary duty of the directors shifts from the stockholders to the creditors").

41. This shifted fiduciary duty exists by reason of Mr. Matkins' status as officer and part owner of Bay Rivers, and is not predicated upon any direct trust relationship that must first be established by Beach Commercial. *See* Airlines Reporting Corp. v. Ellison (In re Ellison), 296 F.3d 266, 270-72 (4th Cir. 2002) (personal conduct of officers, directors and shareholders created indebtedness to corporation's creditor, thus rendering such debt nondischargeable under § 523(a)(4)).

42. Mr. Matkins' and Bay Rivers' sale to Beach Commercial of the Sold Invoices represented by the Fraudulent Receivables, unsupported by delivered goods, was (at a minimum) a grossly reckless defalcation on the part of Mr. Matkins while acting in a fiduciary capacity.

43. Likewise, Mr. Matkins' and Bay Rivers' diversion of the Misappropriated Proceeds, and his subsequent nondisclosure of these misdirected payments via their intentional deposit into a new and unauthorized account, was a knowing, or at least grossly reckless, defalcation on the part of Mr. Matkins while acting in a fiduciary capacity.

44. The resulting losses that have been, and continue to be, sustained by Beach Commercial, and all associated interest and charges, are the direct consequence of Mr. Matkins's intentional or grossly reckless defalcation committed while acting in a fiduciary capacity, and thus are nondischargeable within the scope of 11 U.S.C. § 523(a)(4). *See* Bullock v. BankChampaign, N.A., 113 S.Ct. 1754, 1759-61 (2013) ("defalcation" under § 523(a)(4) requires an intentional wrong or reckless conduct on the part of the debtor); *cf*. Ansari v. Pahlavi (In re Pahlavi), 113 F.3d 17, 20 (4th Cir.) (nondischargeable defalcation under § 523(a)(4) occurs when there is "misappropriation of trust funds or money held in a fiduciary capacity . . . [or the] failure to properly account for such funds, but such defalcation "does not have to rise to the level of 'fraud,' 'embezzlement' or even "misappropriation"") (citations omitted), *cert. denied*, 522

9

U.S. 914 (1997); *see generally* In re Giordano, 472 B.R. 313 (Bankr. E.D. Va. 2012) (Hon. Brian F. Kenney).

**Count Three – 11 U.S.C. § 523(a)(4) (embezzlement/larceny)**

45.    Beach Commercial restates and incorporates for purposes of this Count Three the allegations set forth in paragraphs 1 through 44 above.

46.    Mr. Matkins' intentional conduct with regard to both the Fraudulent Receivables and the Misappropriated Proceeds constitutes "embezzlement" under Virginia law.  Va. Code § 18.2-111; *see* Smith v. Commonwealth, 222 Va. 646, 649 (1981) ("[a] person entrusted with possession of another's personalty who converts such property to his own use or benefit is guilty of the statutory offense of embezzlement")

47.    Mr. Matkins' conduct with regard to both the Fraudulent Receivables and the Misappropriated Proceeds likewise constitutes "larceny" under Virginia law.  Va. Code 18.2-95.  Under Virginia law, larceny is distinguished from embezzlement primary based upon the question of the owner's consent to the perpetrator's initial possession of the misappropriated property.  Id.  If it is determined that Mr. Matkins' intentional conduct with regard to the Fraudulent Receivables and the Misappropriated Proceeds was without Beach Commercial's initial consent, he will be liable for larceny (if not embezzlement).

48.    There is no separate requirement that Mr. Matkins have acted in a fiduciary capacity in order to determine nondischargeable a debt for embezzlement or larceny.  The act alone will suffice.  *See* In re O'Brien, 154 B.R. 480, 483-84 (Bankr. W.D. Tenn. 1993).

49.    The portion of the losses sustained by Beach Commercial, on account of the Fraudulent Receivables and the Misappropriated Proceeds, as well as all associated interest and charges are the direct result of Mr. Matkins' embezzlement or larceny.  11 U.S.C. § 523(a)(4).

WHEREFORE, Beach Commercial respectfully requests that this Court enter a judgment determining:

(i) that Mr. Matkins' conduct in presenting false certifications and misrepresenting the validity of the Fraudulent Receivables are in the nature of money obtained by false representations, and that his intentional conduct in diverting the Misappropriated Proceeds constituted money obtained by actual fraud, all within the scope of 11 U.S.C. §523(a)(2)(A);

(ii) that Mr. Matkins stands in a fiduciary capacity vis-à-vis Bay Rivers' dealings with Beach Commercial, and has committed an intentional or grossly reckless defalcation within the scope of 11 U.S.C. §523(a)(4), with regard to both the Fraudulent Receivables and the Misappropriated Proceeds;

(iii) that Mr. Matkins has committed acts of embezzlement and/or larceny under Virginia state law, within the scope of 11 U.S.C. §523(a)(4), with regard to both the Fraudulent Receivables and the Misappropriated Proceeds;

(iv) that judgment be entered against Mr. Matkins in favor of Beach Commercial in the sum of **$191,097.55**, or in such other amount(s) that this Court deems appropriate, which is a portion of the total indebtedness owed by Mr. Matkins (as guarantor of the obligations of Bay Rivers) to the extent based upon the foregoing improper conduct;

(v) that such judgment be declared nondischargeable as to Mr. Matkins; and

(vi) that Beach Commercial be afforded such other and further relief as is just and equitable.

        Respectfully submitted,

        COMMERCIAL CASH FLOW, L.L.C., t/a
        BEACH COMMERCIAL FINANCE


        By:   */s/ Peter G. Zemanian*
                Of Counsel

Peter G. Zemanian, VSB No. 24922
Zemanian Law Group
223 E. City Hall Ave., Suite 201
Norfolk, Virginia 23510
(757) 622-0090
Counsel for Beach Commercial

12